The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JONATHAN SANTIAGO ROSARIO, individually and on behalf of all others similarly situated,

Plaintiff,

v.

STARBUCKS CORPORATION,

Defendant.

No. 2:16-cv-01951 RAJ

**DEFENDANT STARBUCKS CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

<u>**Note on Motion Calendar:**</u>
**November 30, 2018**

***ORAL ARGUMENT REQUESTED***

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................. 1

II.     STATEMENT OF FACTS ................................................................................... 3

        A.      Starbucks's Use of Consumer Reports for Employment Purposes ..................... 3

        B.      Mr. Rosario's History of Manufacturing FCRA Claims ....................................... 4

        C.      Mr. Rosario's Employment Application with Starbucks ..................................... 5

        D.      Procedural History ........................................................................................ 8

III.    LEGAL STANDARD ........................................................................................... 8

IV.     ARGUMENT ....................................................................................................... 9

        A.      Starbucks Provided Mr. Rosario with All FCRA-Required Notices Before It
                Took "Adverse Action." ................................................................................. 9

                1.      Accurate's Initial Adjudication of Mr. Rosario's Background Check Was
                        Not an Adverse Action. ..................................................................... 10

                2.      Mr. Rosario Received All FCRA-Required Notifications Before
                        Starbucks Took Any Adverse Action. ................................................. 14

        B.      Mr. Rosario Cannot Raise a Genuine Issue of Fact That He Suffered Any Injury,
                Depriving Him of Article III Standing. ............................................................ 16

        C.      Mr. Rosario Cannot Show Starbucks Willfully Violated the FCRA, as He Must
                to Sustain His Claim for Statutory Damages. ................................................. 18

V.      CONCLUSION .................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Arpin v. Santa Clara Valley Transp. Agency*,
    261 F.3d 912 (9th Cir. 2001) ................................................................................................9

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ......................................................................................................8, 9

*Costa v. Family Dollar Stores*,
    195 F. Supp. 3d 841 (E.D. Va. 2016) ...............................................................................10

*Cox v. TeleTech @Home, Inc.*,
    2015 WL 500593 (N.D. Ohio Feb. 5, 2015) .............................................................11, 13

*FW/PBS, Inc. v. Dallas*,
    493 U.S. 215 (1990) ..........................................................................................................16

*In re Barboza*,
    545 F.3d 702 (9th Cir. 2008) .............................................................................................9

*Johnson v. ADP Screening & Selection Servs., Inc.*,
    768 F. Supp. 2d 979 (D. Minn. 2011) ..............................................................................12

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ..........................................................................................................16

*Magallon v. Robert Half Int'l, Inc.*,
    311 F.R.D. 625 (D. Or. 2015)...........................................................................9, 10, 11, 14

*Moore v. Rite Aid Headquarters Corp.*,
    33 F. Supp. 3d 569 (E.D. Pa. 2014).........................................................................11, 14

*Obabueki v. IBM Corp.*,
    145 F. Supp. 2d 371 (S.D.N.Y. 2001) ..............................................................................10

*Reid v. Kroger Co.*,
    2018 WL 1327242 (S.D. Ohio Mar. 15, 2018) ................................................................11

*Rosario v. Gen. Info. Serv., Inc.*,
    13-cv-02346-CMA-BNB (D. Colo. Aug. 30, 2013) ........................................................4, 5

*Rosario v. Gen. Info. Servs., Inc.*,
    No. 15-cv-00895-MEH (D. Colo. April 28, 2015)...........................................................4

*Rosario v. Trans Union, LLC*,
    15-cv-00866-JFL (E.D. Pa. Feb. 20, 2015) .............................................................4

*S. Cal. Darts Ass'n v. Zaffina*,
    762 F.3d 921 (9th Cir. 2014) ...............................................................................9

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007) .......................................................................................18, 19

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ........................................................................16, 17, 18

*Syed v. M-I, LLC*,
    853 F.3d 492 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 447 (2017) ......................19

*Torres v. City of Madera*,
    648 F.3d 1119 (9th Cir. 2011) ...............................................................................8

**State Cases**

*Culberson II v. Walt Disney Parks & Resorts*,
    No. BC526351, slip op. (Cal. Sup. Ct. Feb. 9, 2018).........................................12

1

## I.    INTRODUCTION

2        Plaintiff Jonathan Rosario applied for a job as a barista with Starbucks.  A routine

3   background check turned up a disqualifying criminal conviction.  Starbucks, through its

4   screening vendor, Accurate Background ("Accurate"), sent Mr. Rosario a letter about the

5   background check results and gave him an opportunity to challenge the accuracy of the

6   conviction data.  Mr. Rosario did not timely respond with the necessary information to dispute

7   the results; as a result, Starbucks made a decision not to hire Mr. Rosario, and Accurate notified

8   him accordingly.

9        Six weeks later, Mr. Rosario contacted Accurate to provide evidence establishing the

10  inaccuracy of his conviction data—a three-year-old clearance letter he had in his possession the

11  entire time.  Although Mr. Rosario's job application had since expired in Starbucks's online

12  application system, Mr. Rosario was invited to renew his application so he could be hired into

13  the barista position for which he previously applied.  He chose not to do so.  Instead, he filed

14  this putative class action, claiming Starbucks violated the Fair Credit Reporting Act ("FCRA").

15       Regardless of whether class treatment is appropriate in this case (and, as shown in

16  Starbucks's opposition to Mr. Rosario's motion for class certification, it is not), Mr. Rosario

17  cannot maintain his individual claim that Starbucks violated the FCRA.  The Court should enter

18  summary judgment against Mr. Rosario on his individual claim for at least three reasons:

19       *First*, Mr. Rosario received the FCRA-mandated pre-adverse action notice to which he

20  was entitled.  In fact, Accurate sent him *several* pre-adverse action communications, notifying

21  him of his background check report, his FCRA rights, and providing him with the opportunity

22  for corrections.  When he failed to timely offer documentation showing the criminal conviction

23  data to be inaccurate, Starbucks sent him an adverse action letter, notifying him that he did not

24  meet Starbucks's requirements for employment, but nonetheless offering him an individualized

25  opportunity to appeal that determination.  And, when he did finally produce documentation of

26  the inaccurate conviction data, he was offered the opportunity to submit a renewed application

27  and be hired into the position he sought—an opportunity he claims he was entitled to, but that

he inexplicably refused. Starbucks's handling of Mr. Rosario's application and background check thoroughly surpassed the procedural steps required under the FCRA.

*Second*, Mr. Rosario cannot show Starbucks's supposed FCRA violation harmed him in any way. Mr. Rosario, who already works full time, has filled out nine job applications requiring background checks over a six-year period, and pursued three prior FCRA lawsuits against those employers using the same counsel. He *knew* his background check would reveal inaccurate criminal conviction data—an inaccuracy he has never bothered to correct. And, despite the initial screening result he received from Starbucks, he chose not to timely provide the document proving that inaccuracy—a document he keeps in his possession at all times. When he finally and belatedly chose to supply that proof and Starbucks offered him the job he wanted contingent on completing a renewed job application (as the old one had become stale), he refused and filed suit. Mr. Rosario cannot show a concrete injury-in-fact necessary to maintain Article III standing, when his claim consists of a bare procedural violation divorced from any actual harm. This is particularly true when the harm he alleges—not receiving the Starbucks job he wanted—resulted from his own refusal to complete the process necessary to obtain it.

*Third*, even if Mr. Rosario could prove an FCRA violation (which he cannot do), he cannot show that violation was willful. Because he seeks only statutory (and not actual) damages, he *must* prove that Starbucks willfully violated the FCRA. The uncontroverted evidence, however, demonstrates that Starbucks went to great lengths to comply with the FCRA: It implemented a considered and carefully documented process to ensure all applicants receive the required FCRA notifications and an opportunity to dispute background checks before any final decision regarding employment is made. Because Mr. Rosario cannot show Starbucks willfully violated the FCRA, he has no right to statutory damages, and his claim therefore fails.

## II.     STATEMENT OF FACTS

### A.     Starbucks's Use of Consumer Reports for Employment Purposes

Starbucks is a well-known coffee roaster and retailer based in Seattle, Washington. Before becoming a Starbucks store employee, applicants must complete an employment application online, which includes required disclosures and authorizations.  Dkt. 21 ¶¶ 2-5. After Starbucks makes a conditional offer of employment to a candidate, it initiates a background check on the candidate through Accurate.  *Id.* ¶ 6.  Accurate is a leading provider of employment background checks that is used by businesses of all sizes.  Accurate gathers criminal history and other relevant data on applicants and produces a report of the results for businesses to use.  *See* Dkt. 20 ¶¶ 2-4.

Once Accurate processes a background report for a Starbucks job applicant, a copy of the report is automatically sent to the applicant electronically, and as soon as it is created if so requested (as was the case with Mr. Rosario).  *Id.* ¶ 4.  Accurate then applies Starbucks's established objective employment criteria, and if the report includes criminal convictions that might adversely affect a hiring decision, Accurate automatically sends a pre-adverse action letter to the candidate on Starbucks's behalf.  *Id.* ¶ 5; Dkt. 21 ¶¶ 7-8.  This pre-adverse action letter:  (1) encloses a copy of the background report; (2) encloses a notification of FCRA rights; (3) advises the applicant to review the background report and contact Accurate immediately if inaccuracies are found; (4) notes that if the candidate does not contact Accurate within five business days regarding any inaccuracies, a final hiring decision will be made based on the report; and (5) provides contact information for Accurate and for Starbucks.  Dkt. 20 ¶¶ 5, 11 & Ex. 1; Dkt. 21 ¶¶ 9-10.

The initial background report does not *de facto* determine whether Starbucks hires the applicant.  Dkt. No. 79 ¶ 5.  Rather, before Starbucks makes a hiring decision, candidates have the opportunity to contest the accuracy of the background check if they believe it contains inaccurate information.  *Id.*  If an applicant disputes the accuracy of the background report, Accurate investigates the applicant's claims and, if appropriate, provides an updated report to

Starbucks and the applicant.  Dkt. 20 ¶¶ 6, 12-16; Dkt. 21 ¶¶ 11-12.  Applicants who succeed in this dispute process are converted to a "pass" in Starbucks's systems, and will move forward in the hiring process.  Dkt. 79 ¶¶ 5-6.

Separate from its FCRA dispute process, unlike many employers, Starbucks also maintains a comprehensive appeal process, which is available to even those applicants whose background report accurately reflects a disqualifying criminal record.  *Id.* ¶ 9.  Applicants are invited to provide context, describe positive life changes, and list any facts that might help provide a full picture of the applicant; and Starbucks promises a prompt response to any such appeals.  *Id.*; Dkt. 21 ¶¶ 28-29; Dkt. 20 ¶ 18 & Ex. 4.  Starbucks takes applicants' individual circumstances into account and makes holistic determinations of whether to proceed with hiring any particular applicant.  Dkt. 79 ¶ 9.  These appeals enjoy a very high success rate.  Since October 2015 (when Starbucks began tracking this data), 368 applicants have sought this holistic review, and 339 have succeeded, reflecting a success rate of more than 92%.  *Id.* ¶ 10.  This reflects Starbucks's commitment to provide a second chance at employment to deserving applicants with otherwise-disqualifying criminal histories.  *Id.*

## B.    Mr. Rosario's History of Manufacturing FCRA Claims

Mr. Rosario is a serial FCRA litigant.  *See Rosario v. Gen. Info. Servs., Inc.*, No. 15-cv-00895-MEH (D. Colo. April 28, 2015); *Rosario v. Trans Union, LLC*, 15-cv-00866-JFL (E.D. Pa. Feb. 20, 2015); *Rosario v. Gen. Info. Serv., Inc.*, 13-cv-02346-CMA-BNB (D. Colo. Aug. 30, 2013).  Since at least 2011, he has been aware that his background report inaccurately reflects criminal convictions due to identity theft perpetrated by his adopted brother.  Dkt. 72, Ex. A ("Rosario Dep.") at 22:17-24:10, 34:17-35:6, 36:25-37:23.  Mr. Rosario and his law firm, Francis & Mailman, have developed a productive relationship as a result of this inaccurate conviction data.  Mr. Rosario first contacted Francis & Mailman in 2011 after learning of the inaccurate conviction record in 2011.  *Id.* at 23:15-24:12, 38:10-39:7.  But neither he nor Francis & Mailman has taken even a single step to have the conviction data removed from public records.  *Id.* at 40:13-41:8, 111:2-15, 123:14-18.  Instead, over the last six years,

Mr. Rosario has submitted job applications to at least nine different potential employers including Best Buy, Circle K, Uber, Lowe's, and Home Depot.  *Id.* at 94:1-23, 114:22-115:19, 197:12-14.

In 2013, Mr. Rosario obtained a clearance letter from the Pennsylvania State Police establishing that he was a victim of identity theft and that the conviction information is erroneous.  *Id.* at 36:25-37:23 & Sub-Ex. 3.  This clearance letter is so important to him that he keeps a copy on him at all times.  *Id.* at 43:19-44:25.  He chooses not to supply his clearance letter when he applies for jobs, however, despite knowing inaccurate criminal information will likely be included in his background report.  *Id.* at 122:3-9, 150:5-18.  Rather, if he is initially found ineligible based on the inaccurate conviction data in his report, Mr. Rosario promptly retains Francis & Mailman to bring suit, without providing the clearance letter to move forward with his employment application.  This is precisely what Mr. Rosario did in this case. *Compare* Dkt. 72, Ex. A, Sub-Ex. 17 (engagement letter dated April 14, 2016), *with* Dkt. 20 ¶ 12 (dispute initiated same day, but no letter provided to Accurate).

### C.    Mr. Rosario's Employment Application with Starbucks

Mr. Rosario completed an online employment application for a Starbucks barista position in March 2016.  Dkt. 1 ¶ 10; Dkt. 21 ¶14.  A Starbucks employee interviewed him at a Castle Rock, Colorado store location in late March 2016, and conditionally offered him employment.  Dkt. 1 ¶ 11.  On March 24, 2016, Starbucks asked Accurate to perform a background check on Mr. Rosario.  Dkt. 21 ¶ 17; Dkt. 20 ¶ 7.  Once Accurate obtained a corrected social security number from him, it completed a background check on April 7, 2016.  Dkt. 20 ¶¶ 7-8; Dkt. 21 ¶ 18.  The report showed Mr. Rosario had an extensive criminal record that would ordinarily prevent his employment.  Dkt. 20 ¶ 8.  Although Mr. Rosario was aware of his inaccurate conviction data, and although he carries his clearance letter with him, he withheld the letter during the application process.  Rosario Dep. at 144:22-145:22.

On April 8, 2016, Accurate mailed Mr. Rosario a pre-adverse-action letter, the report, and a notification of FCRA rights.  Dkt. 20 ¶¶ 10-11 & Ex. 1; Dkt. 21 ¶¶ 19-20.  Mr. Rosario

claimed in court filings that he did not receive a letter from Starbucks until after April 20, 2016. Dkt. 24 at 11:1-8.  However, when confronted with irrefutable evidence that he called a toll-free number *listed in the letter* to dispute the results, he recanted and confessed in his deposition that he did, in fact, receive the letter.  Rosario Dep. at 147:4-22.  The letter stated: "If this report contains any information that is inaccurate or incomplete, you should contact Accurate Background immediately so that the corrected information can be reviewed prior to an employment decision being made." Dkt. 20, Ex. 1.  The letter further states that "[i]f the report is accurate or if you do not contact Accurate Background within five (5) business days . . . a final decision will be made based on the information contained in the enclosed report." *Id*. The letter included contact information for both Accurate and Starbucks.  *Id*.  Mr. Rosario does not dispute that this letter contains all of the required components of a valid pre-adverse action notice under the FCRA.

On April 14, 2016, Mr. Rosario signed a formal engagement letter with his current counsel for his (fourth) FCRA lawsuit, this time against Starbucks.  Dkt. 72, Ex. A, Sub-Ex. 17. That same day, at the number provided in the pre-adverse-action letter, he called Accurate to dispute the background check report.  Dkt. 20 ¶ 12.  As with his past employment applications for other employers, Mr. Rosario again chose not to mention (much less provide Accurate with a copy of) his clearance letter.  Dkt. 74 ¶¶ 3-4.  Lacking this critical piece of documentation, Accurate searched the records for the courts that handled the convictions shown in Mr. Rosario's report and confirmed that his name, date of birth, and social security number matched the criminal case information.  Dkt. 20 ¶ 14.  Consequently, on April 19, 2016, Accurate determined that it had no basis to discount the criminal conviction data unless Mr. Rosario could supply additional information.  *Id*.  Despite having the clearance letter in his possession, Mr. Rosario withheld it.  Dkt. 74 ¶ 4.  Accurate notified Starbucks and Mr. Rosario of the dispute results in a letter on April 20, 2016, and included a third copy of his report and a second notification of FCRA rights.  Dkt. 20 ¶¶ 15-16 & Ex. 3; Dkt. 21 ¶ 24.  Mr. Rosario did not respond.  Dkt. 20 ¶ 16.

Because Mr. Rosario's dispute was unsuccessful and Accurate had verified conviction data tied to Mr. Rosario in active criminal court records, Accurate sent him an adverse action letter on behalf of Starbucks on April 20, 2016, notifying him that he did not meet Starbucks's hiring requirements. Dkt. 20 ¶¶ 17-18 & Ex. 4; Dkt. 21 ¶¶ 26-27. The letter advised Mr. Rosario he could appeal by providing Starbucks with additional information, such as "positive changes you have made, and any additional detail you would like to share to ensure Starbucks has a full picture of you as a person and potential partner." Dkt. 20 ¶ 18 & Ex. 4; Dkt. 21 ¶ 28. The letter advised Mr. Rosario he could expect a response from Starbucks within two to five business days. Dkt. 20, Ex. 4; Dkt. 21 ¶ 29. He did not initiate an appeal with Starbucks. Dkt. 21 ¶ 29.

Instead, nearly a month later on May 17, 2016, Mr. Rosario called Accurate and disclosed that his criminal record actually belonged to his adopted brother, who had used Mr. Rosario's identity without permission. Dkt. 20 ¶ 19. Mr. Rosario also—finally—supplied Accurate with the clearance letter he had previously withheld. Dkt. 74 ¶¶ 5-6 & Ex. A. Accurate promptly confirmed the identity theft, updated the background report to remove the inaccurate conviction data, and notified Mr. Rosario on May 20, 2016. Dkt. 20 ¶ 21.

At this point, Starbucks had already taken final adverse action, determining it would not hire Mr. Rosario because of the conviction data; as a result, it had no further obligation to Mr. Rosario under the FCRA. Nonetheless, because Mr. Rosario now met Starbucks's screening criteria, Starbucks re-evaluated his application and decided that he was immediately eligible for hiring. Dkt. 73 ¶ 7; Dkt. 79 ¶ 13. Because he had waited so long to supply the clearance letter, however, his application data was more than two months stale, so Starbucks asked him to submit an updated application with current information. Dkt. 21 ¶ 32; Dkt. 79 ¶¶ 11, 13. At that point, the store he applied to was still hiring for the job he had sought, and he could have completed the hiring process and begun employment with Starbucks immediately. Dkt. 79 ¶ 13. Instead of providing the updated application Starbucks requested, however, Mr. Rosario abandoned his application and filed this lawsuit. *Id.*; *see also* Dkt. 21 ¶ 32.

### D.      Procedural History

Mr. Rosario filed this putative class-action lawsuit on December 21, 2016.  Dkt. 1.  In his complaint, he failed to mention that Accurate sent him a pre-adverse action notice on April 8, 2016, or that he initiated a dispute with Accurate on April 14, 2016.  *See generally id*. Instead, he claimed that Starbucks "adopted" Accurate's initial background report "as its own without any further process being provided to [Plaintiff] and took adverse action against Plaintiff based on that adjudication."  *Id.* ¶ 17.

After extensive discovery relating to his allegations, on December 22, 2017, Mr. Rosario moved for class certification.  Dkt. 59.  Now unable to deny the ample "process" Starbucks and Accurate provided to him, in his class certification motion Mr. Rosario changed his theory of liability.  According to Mr. Rosario, Starbucks pre-determined that he (and other putative class members) would not be hired the instant their background report revealed negative information, and as a result (according to Mr. Rosario), the "adverse action" occurred the moment the background check was run.  *See, e.g.*, Dkt. 59 at 3, 10.

As explained below, Mr. Rosario's theory of liability ignores both the facts and the law. In addition to denying Mr. Rosario's motion for class certification (for the reasons set forth in Starbucks's opposition brief, *see* Dkt. 71), the Court should also enter summary judgment on Mr. Rosario's individual claim.

### III.      LEGAL STANDARD

Summary judgment is appropriate if, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where, as here, the nonmoving party will have the burden of proof at trial, the moving party may meet its

burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has satisfied its burden, the nonmoving party must then set out "specific facts showing that there is a genuine issue for trial" in order to defeat the motion. *Id.* at 324. The responding party must present probative evidence in support of its claim or defense and cannot rest on allegations of the complaint. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001). A genuine issue of fact exists only if there is sufficient evidence on which a reasonable fact finder could find for the nonmoving party. *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *S. Cal. Darts Ass'n v. Zaffina*, 762 F.3d 921, 925 (9th Cir. 2014).

Here, Mr. Rosario cannot meet his burden of setting forth specific facts showing that there is a genuine issue for trial. Starbucks should be granted summary judgment on Mr. Rosario's individual claims.

## IV.     ARGUMENT

### A.     Starbucks Provided Mr. Rosario with All FCRA-Required Notices Before It Took "Adverse Action."

The FCRA requires any person using a "consumer report" for "employment purposes" to, "before taking *adverse action* based in whole or in part on that report, … provide to the consumer …: (1) a copy of the report; and (2) a description in writing of the rights of the consumer …." 15 U.S.C. § 1681b(b)(3)(A) (emphasis added). The statute does not require any specific timing for the disclosures; it simply mandates that the employer provide the disclosure before taking "adverse action." *Magallon v. Robert Half Int'l, Inc.*, 311 F.R.D. 625, 634 (D. Or. 2015). This requirement provides employees with an opportunity to dispute inaccurate information before the employer makes a final decision based on that information. *Id.*

To succeed on his FCRA claim, then, Mr. Rosario must prove that Starbucks (1) took adverse action against him based on the results of a consumer report, and (2) did so *before*

providing him with the statutorily required notifications and sufficient opportunity to dispute any inaccurate information. *Id.* at 633. He cannot meet his burden, as the undisputed facts show that he received the required notifications and he had sufficient opportunity to dispute the results of his credit report before Starbucks took adverse action.

### 1. Accurate's Initial Adjudication of Mr. Rosario's Background Check Was Not an Adverse Action.

The first element Mr. Rosario must prove is that Starbucks took "adverse action" against him. The FCRA defines the term "adverse action" in the employment context as "a denial of employment or any other decision for employment purposes that *adversely affects* any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii) (emphasis added). Only an actual denial of employment or a "decision" with similar adverse effects constitutes an "adverse action." *See id.* The FCRA "does not render every negative employment decision an 'adverse action.'" *Magallon*, 311 F.R.D. at 633. On the contrary, "the statute expressly allows [an employer to form] an intent to take adverse action *before* complying with [the notice requirement], as it states that 'the person *intending* to take' adverse action must provide the report and description of rights." *Obabueki v. IBM Corp.*, 145 F. Supp. 2d 371, 392 (S.D.N.Y. 2001) (emphasis added) (quoting 15 U.S.C. § 1681b(b)(3)), *aff'd*, 319 F.3d 87 (2d Cir. 2003); *see also Costa v. Family Dollar Stores*, 195 F. Supp. 3d 841, 846 (E.D. Va. 2016) ("[C]oding an applicant as not recommended during [a background check] is the formation of intent to take adverse action … not the adverse action itself."). Were it otherwise—if an employer's intent to act based on a background check was itself an adverse action (as Mr. Rosario argues)—the FCRA would be reduced to a chicken-and-egg paradox. An employer could not form intent to take adverse action based on a background report, because it would first need to issue a pre-adverse-action notice; however, it would have no reason to issue the notice because it had not yet reviewed the report and formed intent to act.

For this reason, courts interpreting the FCRA's pre-adverse-action notice requirement distinguish between the formation of intent not to hire based on a background report and a final

decision not to hire following a reasonable dispute period.  "With respect to the scope of the

term 'adverse action,' the question is whether the employer has made a 'final'—as distinct

from preliminary—decision."  *Magallon*, 311 F.R.D. at 633 (quoting *Moore v. Rite Aid*

*Headquarters Corp.*, 33 F. Supp. 3d 569, 574 (E.D. Pa. 2014)).  "[M]erely planning not to hire

an applicant because of something in their background report is not itself an adverse action."

*Id.*  So long as "information provided by the employee [can] affect the final decision," and the

applicant has "enough time between the notice and the final decision to meaningfully contest or

explain the contents of the report," a preliminary screening decision is ***not***, as a matter of law,

an "adverse action" under the FCRA.  *Id*. at 634; *see also Moore*, 33 F. Supp. 3d at 576; *Reid v.*

*Kroger Co.*, 2018 WL 1327242, at *5 (S.D. Ohio Mar. 15, 2018) (granting Defendant's motion

for summary judgment and explaining:  "The FCRA is not violated until an adverse

employment decision 'is communicated or actually takes effect, and an [employer] has until

that time to take necessary steps to comply with the FCRA's requirements.'") (alteration in

original) (quoting *Cox v. TeleTech @Home, Inc.*, 2015 WL 500593 at *4 (N.D. Ohio Feb. 5,

2015)).

Despite this commonsense and uniform interpretation of the FCRA, Mr. Rosario has

previously argued that Starbucks took an adverse action against him at the instant that Accurate

initially evaluated his background check as "Does Not Meet [Starbucks's Criteria]."  *See, e.g.*,

Dkt. 59 at 2.  As the authorities cited above hold, however, an employer can conduct a

preliminary inquiry and form an intent to take an adverse action before notifying the applicant

of their FCRA rights.  So, as a matter of law, Accurate's initial evaluation, standing alone, does

not and cannot constitute adverse action.

To avoid this dispositive result, Mr. Rosario relies exclusively on certain of Starbucks's

written policies, claiming that when a background check is adjudicated as "Does Not Meet,"

the job application is administratively "locked" so the candidate becomes ineligible for hire,

and the store manager is directed to offer the position to another candidate.  *See* Dkt. 59 at 5.

This, Mr. Rosario says, means that the initial screening by Accurate constitutes "adverse

action."  Neither of these characterizations of Starbucks's policies is accurate.  But, more to the point for purposes of summary judgment, these policies do not constitute "adverse action," and *they were not applied in Mr. Rosario's case.*  The Court should reject Mr. Rosario's arguments on this point for several reasons:

*First*, the so-called "locking" of an electronic job application is not, in and of itself, an adverse action under the FCRA.  Starbucks temporarily locks applications during the background check process to prevent store managers from finalizing the hiring process when an applicant has not yet cleared the background check.  Decl. of Lauren Rainwater, Ex. A (Prior Dep.) 63:2-25.  But those applications are unlocked once an applicant successfully disputes or appeals the background check, and the applicant is immediately eligible for hiring so long as the application is less than thirty days old.  *Id.* at 112:16-113:22; Dkt. 79 ¶ 11.  Mr. Rosario can point to no case law holding that a temporary locking of an application pending the clearance of a background check is an adverse action under the FCRA.  In fact, the opposite is true:  Courts uniformly recognize that the temporary locking of an application is entirely permissible in the course of the FCRA dispute process.  *See, e.g.*, *Johnson v. ADP Screening & Selection Servs., Inc.*, 768 F. Supp. 2d 979, 983 (D. Minn. 2011) (holding that it was not an adverse action to place an application "on hold" during the FCRA dispute process); *see also Culberson II v. Walt Disney Parks & Resorts*, No. BC526351, slip op. at 4 (Cal. Sup. Ct. Feb. 9, 2018) (granting summary judgment because Defendant Disney's preliminary "no hire" coding did not constitute an adverse action under §1681b(b)(3) and explaining:  "The Court agrees with Defendant that coding an applicant 'no hire' is not a final decision as evidenced by the undisputed fact that 27 persons originally coded as 'no hire' were hired after they successfully appealed their background reports.").[1]  This is borne out by the undisputed evidence in this case:  Since October 2015, of the 368 job applicants who initially received a "does not meet" evaluation and participated in the voluntary appeal process to Starbucks, 339 succeeded in those appeals and were eligible for immediate employment.  Dkt. 79 ¶¶ 10-11.

---

[1] *Culberson* is attached to declaration of L. Rainwater as **Exhibit C** (highlighting added).

STARBUCKS'S MOTION FOR SUMMARY JUDGMENT
(No. 2:16-cv-01951-RAJ) - 12

Mr. Rosario claims that, despite his ultimately (and belatedly) successful dispute of his inaccurate background, his application remained locked.  This, he says, demonstrates that the initial locking was, in fact, the adverse action.  But this theory finds no factual support.  If a job application is more than thirty days old at the time of the successful dispute or appeal, an updated application must always be submitted.  *Id.* ¶ 11.  This is because Starbucks considers the information in the application stale after thirty days, and, accordingly, Starbucks asks the applicant to submit a new application with updated information.  *Id.*  This does not start the hiring process over—it is merely an administrative requirement to ensure Starbucks has current and accurate information for all prospective employees.  *Id.* ¶¶ 11, 13.

In this case, Mr. Rosario's application was locked after the he initially failed the background check.  Because he waited more than sixty days from the date of his application to disclose the clearance letter needed to correct his background check, Starbucks asked him to submit an updated application with his most current information.  This administrative paperwork requirement cannot give rise to an FCRA violation.  *See, e.g.*, *Cox*, 2015 WL 500593, at *7 (noting that the plaintiff, after a successful dispute of inaccurate background check information, ultimately was not hired due to a failure to submit an I-9 form—an administrative requirement "unrelated to the FCRA").  In sum, Mr. Rosario cannot demonstrate that the administrative "locking" of his application—and the eventual administrative request that he submit an updated application sixty days later after successfully disputing his background check—constitutes an adverse action.

**Second**, Mr. Rosario cannot demonstrate that Starbucks's former policy[2] of providing store managers with discretion to move on to another applicant if hiring needs dictate, resulted in an adverse action *to him.*  To demonstrate an adverse action arising from that policy, Mr. Rosario would have to prove that (1) after he failed the initial background check, the store

---

[2] Although Starbucks's policy has always been to ensure that any applicant who successfully disputes a background check is able to proceed with hiring, to avoid future misunderstandings on this issue, Starbucks has since updated its written policy to expressly require that each employment offer be held open until all dispute periods have run and a final decision is made concerning employment eligibility.

STARBUCKS'S MOTION FOR SUMMARY JUDGMENT
(No. 2:16-cv-01951-RAJ) - 13

manager at the store he applied to offered the position to someone else *before* Mr. Rosario had

an opportunity to dispute the background check; and (2) that no other barista positions at that

store were still available to him had he successfully disputed the background check in a timely

fashion.

Mr. Rosario can prove neither.  On the contrary:  The undisputed evidence shows that

the *same store* at which he applied was still hiring for the *same position*—not only as of April

20, 2016 (the date his background check dispute was first denied) but also as of May 20, 2016,

after he belatedly contacted Accurate and provided a copy of the clearance letter, and after he

was determined to be immediately eligible for hiring.  Dkt. 79 ¶ 13.

The store manager in question did not "move on" from Mr. Rosario.  Rather,

Mr. Rosario inexplicably refused Starbucks's reasonable and administrative request to submit

updated contact information.  While Mr. Rosario may be able to conjure up various

hypothetical, paper-tiger scenarios in which Starbucks's old policy could result in an adverse

action to someone else, the reality is this:  The policy, even as he mischaracterizes it, was not

applied in his case, and it had no effect on him.

For these reasons, Mr. Rosario cannot prove that Accurate's initial evaluation of his

background report resulted in an adverse action—a common-sense conclusion, given the ample

opportunities and notifications Starbucks provided to Mr. Rosario allowing him to dispute his

background check results and obtain the job he supposedly wanted.

### 2.      Mr. Rosario Received All FCRA-Required Notifications Before Starbucks Took Any Adverse Action.

As a threshold matter, the undisputed facts show that Mr. Rosario was never subjected

to a final adverse action, as he must show to prove his FCRA claim.  *See Magallon*, 311 F.R.D.

at 633 (quoting *Moore*, 33 F. Supp. 3d at 574).  After Mr. Rosario unsuccessfully disputed his

claim by failing to provide a copy of his clearance letter, Accurate sent him an adverse action

letter on April 20, 2016, notifying him that he did not meet Starbucks's hiring requirements.

Dkt. 20 ¶¶ 17-18 & Ex. 4; Dkt. 21 ¶¶ 26-27.  But despite that determination, Mr. Rosario again

contacted Accurate (one month later) and provided the necessary documentation.  Dkt. 74 ¶¶ 5-6 & Ex. A.  Accurate promptly reevaluated his application and converted him to a "meets requirements," Dkt. 74 ¶ 7; he was then immediately eligible for hiring and was so informed, Dkt. 79 ¶ 13.  Mr. Rosario chose not to provide updated applicant information.  *Id.*  In other words, it was Mr. Rosario's decision to abandon his employment application—not any action by Starbucks or Accurate—that resulted in Mr. Rosario's non-hiring.  Mr. Rosario was therefore never subject to an adverse employment decision.

That said, even if the Court adopts Mr. Rosario's position (that Starbucks's initial-but-later-reversed decision not to hire him) was an "adverse action," Mr. Rosario admits that this initial decision took place on April 20, 2016, the day he received the adverse action letter from Accurate on behalf of Starbucks.  Rosario Dep. at 203:2-13.[3]  Mr. Rosario cannot and does not dispute that he received all FCRA-required notices prior to the April 20, 2016 adverse action letter; as a result, even under his theory, he has no FCRA claim.

On April 7, 2016, Accurate completed its background check on Mr. Rosario, and automatically sent a copy to the email address Mr. Rosario supplied.  Dkt. 20 ¶ 8; Dkt. 21 ¶ 18.  On April 8, 2016, Accurate mailed Mr. Rosario a pre-adverse-action letter, the report, and a notification of FCRA rights.  Dkt. 20 ¶¶ 10-11 & Ex. 1; Dkt. 21 ¶¶ 19-20.  Mr. Rosario (now) concedes he received these mailed communications.  Rosario Dep. at 147:4-22.  He contacted Accurate, at the number provided in the April 8, 2016 letter, and attempted to dispute the results of the background check.  Dkt. 20 ¶ 12; Dkt. 74 ¶¶ 3-4.  He failed to mention or provide to Accurate a copy of his clearance letter.  Dkt. 74 ¶¶ 3-4.  Without that clearance letter, Accurate had no basis to discount court records showing extensive Pennsylvania criminal conviction data tied to Mr. Rosario and, consequently, his dispute was unsuccessful.  *Id.* ¶¶ 4, 6.  On April 20, 2016, only *after* the dispute process was completed, Accurate sent Mr. Rosario the adverse action letter, notifying him that he did not meet Starbucks's hiring requirements.

---

[3] After a lengthy break in the deposition, Mr. Rosario returned and tried to recant his testimony about the date he was subject to the initial "adverse action." The only explanation he offered for his abrupt change of heart was that he "learned [it] from [his] lawyers." Rainwater Decl. Ex. B (Rosario Dep.) at 254:2-255:2.

Dkt. 20 ¶¶ 17-18 & Ex. 4; Dkt. 21 ¶¶ 26-27.  These undisputed facts demonstrate that Mr. Rosario received the FCRA-mandated copy of his background report and notice of his rights, as well as an opportunity to dispute those results, prior to the April 20 "adverse action" he alleges.  As a result, Mr. Rosario's FCRA claim necessarily fails.

### B.   Mr. Rosario Cannot Raise a Genuine Issue of Fact That He Suffered Any Injury, Depriving Him of Article III Standing.

Even with the benefit of discovery, Mr. Rosario still cannot show he was injured by Starbucks and consequently has standing to maintain a claim.  Because there is no genuine issue of fact about Mr. Rosario's lack of injury, this Court should grant summary judgment on this basis too.

It is well settled that the doctrine of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  The "irreducible constitutional minimum" for establishing standing is that a "plaintiff must … have suffered an injury in fact," by sustaining an "actual or imminent" harm that is both "concrete and particularized."  *Spokeo*, 136 S. Ct at 1547-48.  An injury that is "particularized … must affect the plaintiff in a personal and individual way."  *Id.* at 1548 (citation & internal quotation marks omitted).  A "concrete" injury is one that "actually exist[s]."  *Id.*  "[B]are procedural violation[s], divorced from any concrete harm, [do not] satisfy the injury-in-fact requirement of Article III."  *Id.* at 1549.  Mr. Rosario bears the burden of establishing standing.  *Id.* at 1547 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

As explained above in Part IV.A, Mr. Rosario has failed to raise a genuine issue of fact about whether Starbucks violated the FRCA—because it did not.  But, even if it had, at most, Mr. Rosario has suffered a "bare procedural violation, divorced from any concrete harm," and such a violation does not "satisfy the injury-in-fact requirement of Article III."  *Spokeo*, 136 S. Ct. at 1549.  As explained above, the undisputed evidence shows that Mr. Rosario ultimately succeeded in his dispute, that he was deemed eligible for hiring, and that he was offered the

opportunity to complete that hiring process. *See* Part II.C. The undisputed evidence also shows that the exact same position in the exact same store that Mr. Rosario originally applied for was still open and available to be filled—by him. *See id.* He does not and cannot contest any of these facts.

Mr. Rosario was not hired by Starbucks, but not due to any act or omission by Starbucks. Rather, Mr. Rosario's non-hiring is entirely attributable to his own decision to abandon the hiring process and bring suit instead. Mr. Rosario's decision should come as no surprise, however. Mr. Rosario has been aware for many years that his identity was stolen by his adopted brother and that his criminal history contains convictions that should not be associated with him, but he refuses to do anything to actually remove those convictions from his record. Rosario Dep. at 22:17-24:10, 34:17-35:6, 36:25-37:23, 40:13-41:8, 111:2-15, 123:14-18. He knows that when he applies for jobs, it is likely that the employer will conduct a background check, and that the background check will likely reflect this inaccurate conviction data. *See id.* at 122:3-9, 150:5-18. He also knows—as a result of his representation by Francis & Mailman, his attorneys in this and three other FCRA cases—that he can exploit the inaccurate conviction data in his background reports to manufacture FCRA claims against unwitting employers. Mr. Rosario has applied for employment at no less than nine companies in the last six years, including large retailers like Starbucks, Best Buy, Circle K, Uber, Lowe's, and Home Depot, some of which have resulted in similar lawsuits. *Id.* at 94:2-23, 114:22-115:19, 197:12-14. Moreover, although Mr. Rosario did actually contact Accurate during the initial dispute period to contest the accuracy of his background check report—and although he had the clearance letter in his possession at that very moment—he failed to provide Accurate with that letter. Instead, he returned to his FCRA counsel, waited for a month, and initiated a new dispute with Accurate and supplied the clearance letter—and, when offered the opportunity to be hired for the job he putatively wanted, he walked away and filed suit instead.

Even if Mr. Rosario could identify an FCRA violation (and he cannot), the only harm he alleges did not result from that violation, but from his own independent conduct. As a

result, such a violation—had it occurred—would be precisely the sort of "bare procedural violation" that "result[ed] in no harm" and therefore cannot give rise to Article III standing. *See Spokeo*, 136 S. Ct. at 1550. To hold otherwise would be to reward his bad-faith conduct in bringing a claim based on an outcome that he materially contributed to and that was entirely in his power to avoid.

### C.   Mr. Rosario Cannot Show Starbucks Willfully Violated the FCRA, as He Must to Sustain His Claim for Statutory Damages.

Even if Mr. Rosario could prove that Starbucks violated the FCRA (which he cannot), and that he was injured (which he was not), he cannot meet his additional burden of proving that Starbucks willfully violated the FCRA, as he must to obtain the statutory damages he seeks. This absence of evidence is fatal to Mr. Rosario's FCRA claim, as he seeks only statutory damages.

An FCRA plaintiff may recover actual damages for either negligent or willful violations of the FCRA, 15 U.S.C. § 1681n; 15 U.S.C. § 1681o, but may recover statutory damages (ranging from $100 to $1000 per violation) and punitive damages only for *willful* violations, 15 U.S.C. § 1681n. Although, Mr. Rosario's Complaint alleges negligent and willful violations of the FCRA, Dkt. 1 at 8-9, Mr. Rosario has since clarified that he is seeking only statutory damages—not actual damages. Dkt. 59 at 15 ("Plaintiff Rosario is seeking statutory damages for each member of the class, not actual damages."). Thus, he must prove that Starbucks "willfully fail[ed] to comply" with the FCRA. 15 U.S.C. § 1681n(a).

For a violation of the FCRA to be "willful," a defendant must act in at least "reckless disregard" of its obligations under the statute. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007). "[A] company subject to [the] FCRA does not act in reckless disregard of it unless the [challenged] action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* Whether a reading is reckless depends on the clarity of the statutory language and whether there is authoritative guidance on the issue,

in particular from the FTC or the courts of appeals.  *Id.* at 69-70.  If the company's interpretation is merely objectively unreasonable, the plaintiff is not entitled to statutory damages.  *Syed v. M-I, LLC*, 853 F.3d 492, 505 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 447 (2017).

Here, it is undisputed that Starbucks has a robust FCRA procedure in place.  It retained Accurate, a recognized and reputable industry leader, to conduct background checks and send applicants pre-adverse action notices (including a copy of the background check and a notification of FCRA rights) on behalf of Starbucks.  Dkt. 79 ¶ 4; Dkt. 21 ¶¶ 8-9.  Starbucks hires approximately 109,000 employees nationwide each year, all of whom undergo the requisite background check.  Dkt. 79 ¶ 2.  Applicants are given the opportunity to dispute the background check results and, if they do so successfully, they are eligible for hire.  Dkt. 79 ¶ 5. Applicants are given a full and fair opportunity to dispute the accuracy of those results.  *Id.* While errors in the background checks are infrequent and the accuracy rate of Accurate's background reports is extremely high, Dkt. 79 ¶ 14, since January 2014, at least thirty-four candidates succeeded in disputing the results and obtaining the Starbucks job for which they applied.  *Id.* ¶ 7.  These facts conclusively illustrate that an initial "does not meet" determination is not the final hiring decision.

If after five business days an applicant does not raise a dispute, Starbucks's final decision is made based on the information in the background report, and Accurate sends a letter notifying the applicant of that decision.  Dkt. 21 ¶¶ 8-13.  At the same time, the applicant is invited to appeal the decision by explaining their individual circumstances, including positive life changes following the disqualifying event on the background check report.  Since October 2015, when Starbucks began maintaining data on such appeals, a total of 368 candidates have pursued an appeal, and a total of 339 have been successful—a success rate of more than 92%. Dkt. 79 ¶ 10.  The existence of these robust—and effective—dispute and appeal processes show that Starbucks does not recklessly disregard its obligations under 15 U.S.C. § 1681b(b)(3).  To the contrary, this process demonstrates that Starbucks has worked diligently

1    to comply with the FCRA, and implemented a detailed process to support that effort.  Starbucks

2    even goes one step further than the FCRA's requirements by offering a holistic appeal process

3    for applicants whose background results accurately reflect disqualifying information but who

4    wish for Starbucks to consider additional information.  Dkt. 79 ¶ 9.

5           Mr. Rosario does not dispute the existence of this process but instead contends that

6    Starbucks willfully violates the FCRA because, according to him, an adverse action occurs

7    immediately upon the initial grading of an applicant's background check, and not when

8    Starbucks communicates its no-hire decision to the applicant.  *See* Dkt. 59.  Mr. Rosario's

9    arguments regarding willfulness again boil down to the same two reasons he offers for why the

10   initial screening itself constitutes an adverse action:  because the application is "locked" after a

11   background check fail, and because Starbucks's policies permit store managers to proceed with

12   making an offer to the next available job candidate.  *See id.*

13          With respect to the freezing of an application when the background check fails to meet

14   requirements, applications are unfrozen once an applicant successfully disputes or appeals their

15   background check, so long as the application is less than thirty days old.  Dkt. 79 ¶ 11.  Only if

16   the application is more than thirty days old at the time of the successful dispute or appeal does

17   Starbucks ask the applicant to submit an updated application because it considers the

18   information stale.  *Id.*  Starbucks's temporary freezing of job applications during the dispute

19   process, and its request for updated information after thirty days, is not a violation of the FCRA

20   at all, and it certainly does not demonstrate a reckless disregard for the FCRA's requirements.

21   Indeed, it seems obvious that a company would "lock" or otherwise not move forward with an

22   application in this scenario.  To do otherwise would render the background process pointless.

23   There is also no FTC guidance that prohibits a company from asking for an updated application

24   after a lengthy delay in the hiring process.  Consequently, Mr. Rosario cannot rely on the

25   temporary "locking" of applications to satisfy the willfulness requirement.

26          Starbucks's former policy—which allows (but does not require) a store manager to

27   proceed with making an offer to another applicant if their hiring needs dictate—likewise does

not constitute reckless disregard for the FCRA's requirements.  There is no circuit court opinion or FTC guidance prohibiting an employer from moving forward with making an offer to another applicant while the dispute period for the first applicant is pending.  There is also no adverse consequence to the first applicant, as Starbucks has a vast number of barista positions, which people frequently take on a temporary or part-time basis, as Starbucks stores are always hiring baristas.  *See* Dkt. 73 ¶ 7; Dkt. 75 ¶ 2; Dkt. 77 ¶ 3.  These positions are identical in the salary, benefits, and job duties they include.  Thus, even if a store manager were to "move on" to hiring another candidate, that does not mean—as Mr. Rosario seems to think—that the disputing candidate would be left without a job if their dispute is ultimately successful.

Mr. Rosario cannot rely on his characterization of a policy—with no tangible evidence it has ever precluded a qualified candidate from being hired—to demonstrate a willful violation of the FCRA.  This is particular so here, where Mr. Rosario was not (and cannot possibly claim to have been) subject to this policy.  Thus, even if he could show that he was subject to a violation of the FRCA, the policy he points to cannot support his theory that any such violation was willful.

Because Starbucks did not recklessly disregard the requirements of 15 U.S.C. § 1681b(b)(3), Mr. Rosario cannot establish willfulness and, therefore, cannot recover statutory damages.  His claim should therefore be dismissed.

## V.   CONCLUSION

For the foregoing reasons, Starbucks respectfully requests that the Court grant summary judgment, dismissing Mr. Rosario's claims with prejudice.

DATED this 25th day of October, 2018.

DAVIS WRIGHT TREMAINE LLP
*Attorneys for Starbucks Corp.*

By  */s/  James E. Howard*
    James E. Howard, WSBA #37259
    Lauren B. Rainwater, WSBA #43625
    James Harlan Corning, WSBA #45177
    1201 Third Avenue, Suite 2200
    Seattle, WA  98101-3045
    Telephone: (206) 622-3150
    Fax: (206) 757-7700
    E-mail:   jimhoward@dwt.com
              laurenrainwater@dwt.com
              jamescorning@dwt.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## CERTIFICATE OF SERVICE

I hereby certify that on the date below, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system.  All other parties (if any) shall be served in accordance with the Federal Rules of Civil Procedure.

DATED:  October 25 2018

*/s/  James E. Howard*
James E. Howard